# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ROSENA L.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 17 C 7771

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosena L. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On May 8, 2014, Plaintiff applied for DIB, alleging that she became disabled on October 15, 2013 because of a thyroid condition, idiopathic thrombocytopenia, and right-hand problems, including numbness. (R. at 127, 137, 157, 232). The Social

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

Security Administration (SSA) denied Plaintiff's application initially on July 28, 2014 and upon reconsideration on March 27, 2015. (*Id.* at 152–57, 161–64). After requesting a hearing, Plaintiff, represented by counsel, testified before an Administrative Law Judge (ALJ) on April 14, 2016. (*Id.* at 54–56, 63–89, 101–09, 165–66). The ALJ also heard testimony from a medical expert (ME) and a vocational expert (VE). (*Id.* at 54–55, 90–100, 109–25).

On August 25, 2016, the ALJ issued an unfavorable decision. (R. at 22–39). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (*Id.* at 27). At step two, the ALJ found that Plaintiff has the following severe impairments: right wrist arthritis secondary to scapholunate advanced collapse (SLAC) wrist, status post fusion; autoimmune inflammatory process, including left wrist/hand; and left wrist ulnar impaction syndrome. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 28).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except that she should not climb ladders, ropes, or scaffolds; she can occasionally crawl; and occasionally handle and finger with her bilateral hands. [Plaintiff] can lift or carry up to 10 pounds with her dominant right hand. She

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which "is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1520(a)(4).

2

should avoid moderate exposure to hazards such as dangerous moving machinery or unprotected heights.

(R. at 28). Moving to step four, the ALJ determined that Plaintiff could not perform any past relevant work. (*Id.* at 32). At step five, the ALJ found that light, unskilled jobs existed in significant numbers in the national economy that Plaintiff could perform, such as usher (52,000 jobs), furniture rental consultant (44,000 jobs), or counter clerk (44,000 jobs). (*Id.* at 33–34). Accordingly, the ALJ concluded that Plaintiff had not been under a disability from her alleged onset date through the date of the ALJ's decision. (*Id.* at 34).

On September 9, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–5). Plaintiff seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial

3

evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's

4

argument that the ALJ erred in evaluating Plaintiff's subjective symptom allegations.[3]

A two-step process governs the evaluation a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2 (Mar. 16, 2016). "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore

---

[3] Because the Court remands for this reason, it does not address Plaintiff's other arguments at this time.

*circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

Although the Court will uphold an ALJ's subjective symptom evaluation if it "is not patently wrong," the ALJ "still must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). Simply reciting the regulatory factors, though, is not enough: "[w]ithout an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

The ALJ found that Plaintiff's symptom allegations were "not entirely consistent with the medical evidence and other evidence in the record" and were "not entirely supported by the record evidence." (R. at 29, 31). Specifically, the ALJ found that Plaintiff's allegations were not supported because: (1) Plaintiff "testified that she left her former job because she was fired, not because her impairments prevented her from working"; and (2) Plaintiff has improved with treatment, including corticosteroid injections and surgery, such that "she is able to use her hands to do things that need doing." (*Id.* at 31). Because these reasons are legally insufficient and not supported by substantial evidence, remand is warranted. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

First, the ALJ erred by selectively relying on one aspect of Plaintiff's work history to discredit her symptom statements while ignoring the rest. The ALJ discounted Plaintiff's allegations because she left her last place of employment due to being fired rather than because of her physical impairments. (R. at 31).[4] Yet, the ALJ did not mention that Plaintiff testified that she looked for employment after she was fired but could not return to work due to increasing pain and weakness for which she needed medical treatment. (*Id.* at 69–71, 76–79, 83). Also, the ALJ did not address Plaintiff's fifteen-year employment history with good earnings, (R. 240–45, 270–74), which could support her allegations of being unable to work due to her physical limitations. *See Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.' ") (citing *Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir. 2015).

The ALJ also failed to explain how Plaintiff's "improvement with treatment" undermined her allegations of continued impairments and pain following treatment. When discounting Plaintiff's allegations, the ALJ stated:

> [T]he record . . . shows that the claimant has improved with treatment and she is able to use her hands to do things that need doing. Corticosteroid injections provided significant temporary relief, and surgery improved the functioning of the claimant's right hand and wrist to the point that she was back to doing "essentially everything." The claimant now states that she has increased left wrist pain. However, once again, the medical record indicates that she has experienced improvement with treatment.

---

[4] Plaintiff testified that she last worked in 2013 for a high school where she was responsible for ordering uniforms and equipment. (R. at 69–70). She stated that she was fired for allegedly taking a sweatshirt home that did not belong to her; however, she denied taking it. (*Id.*).

7

(R. at 31) (*citing Id.* at 696–698, 938, 957, 969, 1038). But the ALJ did not explain how Plaintiff's treatment with steroids injections, which provides only short-term relief, and surgery on her right hand in 2015, undermined her allegations of continuing decreased mobility in her right hand and progressive left hand and wrist pain through 2016. Nor did the ALJ explain how Plaintiff's improvement related to her ability to perform full time employment. "Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.").

Moreover, the citations provided by the ALJ were only to five progress notes where the ALJ selectively highlighted portions that supported her conclusions but ignored contrary notations. For example, although Plaintiff's occupational therapist did note in July 2015 that Plaintiff reported that she "use[d] her hands for things that need doing," the ALJ failed to mention that the note also indicated that Plaintiff reported that she could only use her hands "for things that need doing" when her right hand was taped and that the pain had not changed much. (*Id.* at 696–98). In the same note, the therapist stated that Plaintiff still could not complete light hygiene and dressing tasks without pain; that she continued to experience pain and stiffness in the morning; and that she had not resumed her former hobbies such as gardening. (*Id.*). Similarly, although her treating physician, Dr. Prete, acknowledged in August 2015 that Plaintiff is feeling much better and

8

able to use her hands after starting on prednisone and plaquenil, the doctor also noted that she is fatigued, has diffuse joint pain and is "currently still unable to work." (R. at 957). Likewise, although Plaintiff's treating physician indicated in November 2015 that she "had a good response to steroids" and "had no significant pain/stiffness in her hands while on prednisone," Dr. Woodrick also noted that now Plaintiff's "left wrist is very painful" and "feels like the right did a year or two ago." (R. at 969). The ALJ is not permitted to "'cherry-pick' from . . . mixed results to support a denial of benefits," as she did here. *Scott*, 647 F.3d at 739–740.

Also absent from the ALJ's analysis is any discussion of a host of additional evidence which could corroborate Plaintiff's pain allegations. The Seventh Circuit instructs that "where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations." *Zurawski v. Halter*, 245 F. 3d 881, 887–88 (7th Cir. 2001) (*citing Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Here, the ALJ erred by offering no analysis of how the medical evidence that could "reasonably support a claimant's complaint of pain," either contradicts or undermines Plaintiff's allegations of pain. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("Ignored was the requirement [ALJs] carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it.") (citing 20 C.F.R. § 404.1529). For instance, the ALJ did not address evidence of continued pain and limited mobility in her right-hand following surgery; of worsening left hand and wrist pain, with MRI results showing severe degenerative changes; and of

9

her diagnoses in 2015 and 2016 of left wrist Triangular Fibrocartilage Complex (TFCC) tear and ulnocarpal impingement syndrome. (627–28, 823–24, 1038). "An ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982). The ALJ committed reversible error by ignoring this contradictory evidence and should consider it on remand.

The ALJ similarly erred by failing to assess Plaintiff's complaints of disabling fatigue or to explain how the medical evidence either supports or contradicts these allegations. Plaintiff alleged that she was persistently tired and fatigued and needed to rest for up to five hours a day. (R. at 80–81). The record reveals numerous occasions where the Plaintiff reported her fatigue to her treaters and where her doctors observed her fatigued presentation. (*Id.* at 910, 913, 915, 930, 934, 957, 960–61, 992, 1019, 1041). Plaintiff's treating physician, Dr. Prete, concluded that Plaintiff's moderately-severe fatigue required her to nap several times during the day in addition to eight hours of sleep at night. (R. at 1041). "To the extent [the ALJ] chose not to address the issues of pain and naps because she found [claimant]'s testimony on these issues to be incredible, the ALJ was required to explain her reasoning." *Cuevas v. Barnhart*, No. 02 C 4336, 2004 WL 1588277, at *15 (N.D. Ill. July 14, 2004). The ALJ did not do so here. *See McCammond v. Colvin*, No. 15 C 6589, 2016 WL 3595736, at *6 (N.D. Ill. July 5, 2016) (requiring the ALJ

on remand to assess the claimant's "claim that he must sit or lie down throughout the day").

Additionally, the ALJ failed to address Plaintiff's daily activities as outlined in SSR 16-3p. Plaintiff testified that she cannot perform basic daily activities such as brushing and blow drying her hair and making the bed. (R. at 68, 81–82). She also stated that she needs help from her family chopping up food for meals, carrying laundry downstairs, and folding the laundry. (*Id.* at 67–68). These limitations on daily activities were also noted by her treatment providers. (696–98, 1041). Without addressing these allegations, the Court does not "have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942; *see also Zurawski*, 245 F.3d at 887 (finding error when the AJ did not explain inconsistencies between claimant's "activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence").

For these reasons, the Court finds that the ALJ's evaluation of Plaintiff's subjective symptoms statements was not supported by substantial evidence. On remand, the ALJ shall reevaluate Plaintiff's subjective symptom allegations in accordance with SSR 16-3p and with due regard for the full range of medical evidence. *See Zurawski*, 245 F.3d at 888. The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed.

## IV. CONCLUSION

Plaintiff's request to remand for additional proceedings [14] is **GRANTED**, and the Commissioner's motion for summary judgment [21] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 6, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge